***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff was employed by W O Masonry, and the Commission has jurisdiction of the parties and subject matter.
2. Plaintiff's average weekly is $760, yielding a compensation rate of $506.67.
3. The parties stipulated the following into evidence:
4. Stipulated Exhibit 1 plaintiff's medical records;
5. Stipulated Exhibit 2 plaintiff's medical bills; and
6. Stipulated Exhibit 3 plaintiff's recorded statement, dated 9 October 2000.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. North Carolina Farm Bureau Mutual Insurance Company was the workers' compensation carrier on the risk at the time of plaintiff's alleged back injury on 4 May 2000.
2. Plaintiff, David Ogle, worked as a stonemason for WO Masonry for approximately 20 years. His job duties included shaping and laying stone on walkways, foundations, walls, etc. He was regularly required to lift from 10 to 200 pounds.
3. Plaintiff experienced chronic back pain since beginning in stonework. He missed work sporadically prior to 4 May 2000 because of low back pain and often wore a back brace while working to alleviate his pain.
4. Prior to 4 May 2000, plaintiff treated with chiropractor, Dale Williams, for approximately six months, three times per week, for relief of low back pain and realignment of plaintiff's neck. Between August 1999 and May 2000, he had treated with Dr. Williams approximately 100 times.
5. Around 4 May 2000, plaintiff and other employees of WO Masonry were working at a private residence installing a sidewalk, fieldstone on a foundation, step treads and caps on a retaining wall in a rose garden. These activities required him to lift the usual 50 to 200 pounds with the assistance of another employee. On Monday and Tuesday of that week, he and the crew installed a sidewalk; on Wednesday he filled in the joints of the sidewalk with grout.
6. On Thursday, 4 May 2000, plaintiff was working placing caps on a rose bed retaining wall. The caps consisted of pieces of stone approximately two inches thick and 12 inches wide, and were in different lengths from two to four feet. Each stone weighed between 50 to 200 pounds. In addition to the retaining wall, plaintiff worked placing paving stones as step treads for a stairway in the garden. The stones used here weighed between 150 and 200 pounds each, with smaller stones laid around the treads. Plaintiff testified that this particular work constituted the heaviest stonework of the project.
7. After work on 4 May 2000, plaintiff went to one of his previously scheduled chiropractic appointments with Dale Williams, D.C. She adjusted his back normally. He did not describe unusual pain or any event occurring at work on 4 May 2000 to Dr. Williams. That night, while in the shower, he noticed his right leg was going numb.
8. The next morning, plaintiff went to work as usual. His right leg remained numb and felt the same as it had the night before. He worked briefly on the morning of 5 May 2000, and then told his supervisor that he was going to the hospital to find out what was wrong with his leg. Plaintiff did not return to work until 22 September 2000.
9. Initially, plaintiff treated with the VA hospital. He was treated with medication and an MRI was scheduled for 22 June 2000. As plaintiff convalesced at home, his pain increased and he realized he was not going to be able to wait until 22 June to find out what was causing his symptoms. Plaintiff went to his family physician, Dr. James Winslow, who referred him to neurosurgeon, Dr. Bruce Kihlstrom.
10. Dr. Kihlstrom ordered an MRI which was performed on 23 May 2000 and revealed a herniated disc at L4-5 which was compressing the right L4 nerve. Dr. Kihlstrom diagnosed plaintiff with a ruptured disc at L4-5 and performed a laminectomy and diskectomy on 13 June 2000. Dr. Kihlstrom wrote plaintiff out of work as of the date of his back surgery. Dr. Kihlstrom recorded in his initial examination of plaintiff that he reported low back pain, hip pain and leg numbness without antecedent event, by which he meant that plaintiff did not recall an incident that resulted in the disc rupture. However, Dr. Kihlstrom opined that the detailed list of events which occurred on May 4 and May 5 was consistent with plaintiff's injury. He further stated that it was reasonable that when the disc actually ruptured, plaintiff did not experience immediate problems, but rather developed progressive problems as the nerve began to swell.
11. Plaintiff did not report his back problems as a workers' compensation claim until 8 August 2000. Plaintiff paid for his surgery himself, and did not report the claim as a workers' compensation injury until he was referred to his counsel by a vocational rehabilitation worker at Innovation Rehabilitation in Roxboro, North Carolina.
12. Following the 13 June 2000 surgery, Dr. Kihlstrom released plaintiff from his care on 21 September 2000, with a 15% permanent partial impairment rating. Plaintiff returned to work for defendant-employer on 22 September 2000, at full duty.
13. On 4 May 2000, plaintiff experienced the onset of back pain resulting from a specific traumatic incident of the work assigned which occurred at a cognizable time. As a result of the specific traumatic incident, plaintiff suffered a ruptured disc at L4-5 which required surgery and which left plaintiff with a 15% permanent partial disability rating to his back.
14. Defendants were noticed of plaintiff's injury on 5 May 2000, one day after plaintiff began exhibiting symptoms of the ruptured disc. Defendants were not prejudiced by plaintiff's delay in filing a claim for workers' compensation benefits relating to the 4 May 2000 injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. To establish that he sustained a compensable back injury, plaintiff has the burden of proving that he sustained an injury arising out of and in the course of his employment as the direct result of a specific traumatic incident of the work assigned N.C. Gen. Stat. § 97-2(6).
2. "Specific traumatic incident" means that the "injury must not have developed gradually but must have occurred at a cognizable time." Bradleyv. E. B. Sportswear, Inc., 77 N.C. App. 450, 452, 335 S.E.2d 52, 53
(1985). Based upon the testimony of Dr. Kihlstrom, who opined that plaintiff's symptomology was consistent with his suffering a ruptured disc while lifting heavy stones at work on 4 May 2000, plaintiff's injury occurred at a cognizable time and arose out of and in the course of his employment with defendant-employer. Id.
3. Plaintiff is entitled to temporary total disability compensation benefits in the weekly amount of $506.67, beginning on 5 May 2000 and continuing through 21 September 2000. N.C. Gen. Stat. § 97-29.
4. After 21 September 2000, plaintiff was no longer totally disabled, but he retained a permanent partial disability in the amount of 15% to his back as a result of his compensable injury by accident. Therefore, upon reaching maximum medical improvement, plaintiff is entitled to 45 weeks of compensation at the weekly rate of $506.67, which equals $22,800.15. N.C. Gen. Stat. § 97-31(23).
5. Plaintiff is entitled to have defendants pay interest at the rate of 8% on the above compensation from 31 October 2001 (the date of the hearing before the Deputy Commissioner) until paid. In addition, plaintiff is entitled to have defendants pay interest at the rate of 8% on any medical bills related to his compensable injury which defendants have not paid prior to this Opinion and Award, from 31 October 2001 until paid. N.C. Gen. Stat. § 97-86.2; Childress v. Trion, Inc.,125 N.C. App. 588, 481 S.E.2d 697, disc. review denied, 346 N.C. 276,487 S.E.2d 541 (1997).
6. Plaintiff is entitled to payment by defendants for all medical treatment related to his compensable injury, including the 13 June 2000 surgery performed by Dr. Kihlstrom. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation in the weekly amount of $506.67 from 5 May 2000 through 21 September 2000. Payment shall be made in a lump sum, subject to attorney's fees approved below.
2. Defendants shall pay to plaintiff a total of $22,800.15 in indemnity compensation, reflecting a 15% permanent partial disability rating to his back. Payment shall be made in a lump sum, subject to attorney's fees approved below.
3. Defendants shall pay to plaintiff interest at the rate of 8% on the above compensation from 31 October 2001 (the date of the hearing before the Deputy Commissioner) until paid. In addition, defendants shall pay to plaintiff interest at the rate of 8% on any medical bills related to his compensable injury which defendants have not paid prior to this Opinion and Award, from 31 October 2001 until paid.
4. Defendants shall pay for all medical treatment incurred by plaintiff as a result of his compensable injury.
5. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the amounts awarded in Paragraphs 1 and 2 above. One fourth of the lump sum payments shall be paid directly to plaintiff's counsel.
6. Defendants shall pay the costs of this action. In addition, defendants shall pay an expert witness fee, which is hereby approved, to Dr. Kihlstrom in the amount of $345.00.
This the ___ day of April, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER